**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| SANDRA D. COX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-cv-00936-TWP-DKL |
| | ) | |
| COCA-COLA, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court is on a Motion for Summary Judgment filed by Defendant Coca-Cola Refreshments USA, Inc. ("Coca-Cola"). Following termination of her employment with Coca-Cola, Plaintiff Sandra D. Cox ("Ms. Cox") filed this action alleging claims for gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), retaliation, failure to reinstate and punitive damages[1]. The reason given for her termination was that she violated Coca-Cola's attendance policy. Ms. Cox does not dispute that she violated the policy, however, she alleges that several similarly situated male employees who violated Coca-Cola's attendance policy were either not terminated or if terminated they were later reinstated. Coca-Cola denies that it discriminated against Ms. Cox because of her gender. For the following reasons, the Court **grants in part and denies in part** Coca-Cola's Motion for Summary Judgment (Filing No. 45).

---

[1] The parties previously stipulated to dismissal of the retaliation claim. (Filing No. 41; Filing No. 42.) In addition, Ms. Cox did not respond to Coca-Cola's arguments regarding the reinstatement claim either in her response or surreply briefs. Accordingly, the Court considers Ms. Cox to have abandoned her reinstatement claim and **GRANTS** summary judgment in favor of Coca-Cola on both the retaliation and reinstatement claims. *See, e.g.*, *Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003) (observing that arguments not addressed in summary judgment response brief are deemed abandoned); *Cohen-Chaney v. Nat'l R.R. Passenger Corp.*, No. 1:10-cv-0400-JMS-TAB, 2012 WL 243676, at *3 n.1 (S.D. Ind. 2012).

# I. BACKGROUND

As required by Federal Rule of Civil Procedure 56, all inferences and all admissible evidence is presented in the light most favorable to Ms. Cox as the non-moving party. See *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

Coca-Cola's Indianapolis, Indiana facility is divided into three groups: manufacturing, distribution, and sales. In 2001, Ms. Cox began working for Coca-Cola as a machine operator in the manufacturing division. Richard Johnson ("Mr. Johnson") began his employment at Coca-Cola in May 2011 as interim Plant Manager and in November 2011 he was named as Plant Manager, overseeing manufacturing operations at the facility. Ms. Cox worked under Mr. Johnson's authority from May 2011 until her termination on July 22, 2013.

Coca-Cola has Equal Employment Opportunity and Anti-Discrimination Policies which prohibit discrimination or harassment on the basis of protected characteristics or classifications, and prohibit retaliation for engaging in related protected activities. These policies also provide many avenues through which employees may bring their complaints if they believe they are being discriminated against.

Coca-Cola manufacturing employees are represented by the Retail, Wholesale, and Department Store Union Local 1096 (the "Union"). Coca-Cola also maintains an attendance policy for its manufacturing division, as dictated by the Collective Bargaining Agreement. Under the attendance policy, a manufacturing employee is subject to termination if he or she accrues twelve or more points within a rolling twelve-month period.

Ms. Cox does not dispute that during her tenure at Coca-Cola she received twenty-seven disciplinary actions related to attendance or clocking violations, including fourteen 3-day

suspensions and three final warnings.  Further, she readily admits that she was terminated from her employment on July 22, 2013 for receiving more than twelve points within a twelve month period, in accordance with the attendance policy.  (*See* Filing No. 50 at 4, 21; Filing No. 47-1 at 126; *see* also Filing No. 51-3 at 6; Filing No. 47-5 at 19.)  However, Ms. Cox contends that she was singled out and treated much more harshly than similarly situated males who violated the attendance policy.  She argues that the attendance policy was enforced in a discriminatory manner, allowing "second chances" for males but not for females.  It is on this theory that Ms. Cox stakes her Title VII discrimination claim.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court reviews the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.

The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (noting that, when the non-movant has the burden of proof on a substantive issue, specific forms of evidence are not required to negate a non-movant's claims in the movant's summary judgment motion, and that a court may, instead, grant such a motion, "so long as whatever is before the district court demonstrates that the standard . . . is satisfied.").  *See also* Fed. R. Civ. P. 56(c)(1)(A) (noting additional forms of evidence used in support or defense of a summary judgment motion, including:

3

"depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials").

A non-moving party, who bears the burden of proof on a substantive issue, may not rest on its pleadings but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Celotex Corp.*, 477 U.S. at 323-24; Fed. R. Civ. P. 56(c)(1). Neither the mere existence of some alleged factual dispute between the parties nor the existence of some "metaphysical doubt" as to the material facts is sufficient to defeat a motion for summary judgment. *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997); *Anderson*, 477 U.S. at 247-48; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which [it] relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

Similarly, a court is not permitted to conduct a paper trial on the merits of a claim and may not use summary judgment as a vehicle for resolving factual disputes. *Ritchie v. Glidden Co., ICI Paints World-Grp.*, 242 F.3d 713, 723 (7th Cir. 2001); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Further, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("these are jobs for a factfinder"); *Hemsworth*, 476 F.3d at 490. Instead, when ruling on a summary judgment motion, a court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Id*.

### III. DISCUSSION

**A.    Title VII Discrimination**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer, "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (2012).  A plaintiff alleging discrimination under Title VII may prove discrimination using either the direct method, by proffering direct or circumstantial evidence that discrimination motivated the adverse employment decision, or the indirect, burden-shifting method.  *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 849-50 (7th Cir. 2008); *Miller v. Ind. Univ. Health, Inc.*, No. 1:12-CV-1667-TWP, 2014 WL 4259628, at *4 (S.D. Ind. Aug. 29, 2014). Ms. Cox argues that she can prove discrimination with both indirect and indirect evidence.

**1.    Direct Method**

The direct method of proof requires a plaintiff to produce either direct evidence or a "convincing mosaic" of circumstantial evidence in order to prove that a defendant was motivated by animus toward a protected class when the plaintiff suffered an adverse employment action. *Andonissamy*, 547 F.3d at 849; *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012); *Miller*, 2014 WL 4259628, at *4 (S.D. Ind. Aug. 29, 2014).

Direct evidence establishes "the fact in question without reliance on inference or presumption." *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005); *Miller*, 2014 WL 4259628, at *4. *See also Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009) ("[d]irect evidence would be an admission by the decisionmaker that the adverse employment action was motivated by discriminatory animus").

In contrast, circumstantial evidence "allows a jury to infer intentional discrimination by the decision maker". *Rhodes v. Ill. Dep't of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004) ("circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action"); *Miller*, 2014 WL 4259628, at *4. Circumstantial evidence in employment discrimination cases typically comes in three categories, including: (1) evidence of suspicious timing, ambiguous oral or written statements, or behavior or comments directed at other employees in the protected group; (2) evidence that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination. *Coleman*, 667 F.3d at 860; *Darchak*, 580 F.3d at 631.

Ms. Cox presents no direct evidence of discrimination, either in the form of an admission by a decision-maker or in the form of circumstantial evidence. For instance, she presents no evidence that the persons responsible for her termination made any derogatory or discriminatory remarks based on her gender. Although she alleges that males were treated more favorably under the attendance policy, as discussed in greater detail below, Ms. Cox presents only a small handful of potential comparators whose employment was not terminated under the attendance policy. In contrast, Coca-Cola submitted rebuttal evidence of alleged male comparators whose employment was terminated under the attendance policy. Without more, Ms. Cox cannot establish that males were "systematically" treated better than females under the attendance policy.

Accordingly, Ms. Cox has failed to present sufficient direct evidence of gender discrimination and must, instead, establish her claim under the indirect method of proof. *See Andonissamy*, 547 F.3d at 849-50; *Miller*, 2014 WL 4259628, at *4;

2.      **Indirect Method**

Under the indirect method of proof, a *prima facie* case of discrimination requires a showing that: (1) the plaintiff is a member of a protected class; (2) she was meeting the employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a "similarly situated" non-protected class member.  *Andonissamy*, 547 F.3d at 849-50; *Velez v. City of Chi.*, 442 F.3d 1043, 1049-50 (7th Cir. 2006).  To establish the *prima facie* case, a plaintiff must raise a genuine issue of material facts for each element. *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 798 (7th Cir. 1995); *Grady v. Affiliated Comput. Servs. ACS*, No. 1:13-CV-342-TWP, 2015 WL 1011355, at *4 (S.D. Ind. Mar. 4, 2015).

Once the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action. *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 814 (7th Cir. 2007); *Grady*, 2015 WL 1011355, at *4.  If the defendant does so, the burden shifts back to the plaintiff to submit evidence demonstrating that the defendant's explanation is pretextual.  *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012); *Grady*, 2015 WL 1011355, at *4.

It is undisputed that Ms. Cox falls within a protected class and that she suffered an adverse employment action. However, Coca-Cola argues that Ms. Cox cannot establish the remaining prongs of a *prima facie* case and she cannot establish that Coca-Cola's stated justifications for her termination were pretextual.

a.      **Legitimate Expectations**

To meet the second element of a *prima facie* case, Ms. Cox must establish that she was performing her job to the employer's legitimate expectations at the time of the adverse employment action.  *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 328-29 (7th Cir. 2002).  Ms.

Cox readily admits that she had accumulated the requisite number of disciplinary points within the twelve month period to subject her to termination under the attendance policy.  Further, Ms. Cox does not contend that she was unaware of the attendance policy; that the policy did not apply to her; or that the policy was not enforced against her according to its terms.  Instead, she asserts that Coca-Cola applied its legitimate expectations in a discriminatory manner, thus, the Court's analysis of the legitimate expectation prong of the *prima facie* case merges with its pretext analysis.  *See, e.g.*, *Curry v. Menard, Inc.*, 270 F.3d 473, 477-78 (7th Cir. 2001) (where the issue is whether the plaintiff was singled out for discipline based on a prohibited factor, it "makes little sense...to discuss whether she was meeting her employer's reasonable expectations"); *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 n. 3 (7th Cir. 2001) ("legitimate expectations" prong of the *prima facie* test is not necessary to the analysis, where the people judging the plaintiff's performance were the same people she accused of discriminating against her).  Accordingly, Ms. Cox's admissions regarding her significant attendance issues are not fatal to her *prima facie* case.

### b.   <u>Treatment of Similarly Situated Employees</u>

To meet the fourth element of a *prima facie* case, Ms. Cox must establish that she was treated less favorably than a "similarly situated" employee outside of her protected class.  *Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008); *Grady*, 2015 WL 1011355, at *6.  To establish a "similarly situated" comparator, a plaintiff must show that there is someone, not of the protected class, who is directly comparable to her in all material aspects.  *Id*.

In the usual case, a plaintiff must show that the comparators dealt with the same supervisor, were subject to the same standards, and engaged in similar conduct without any differentiating circumstances to distinguish their conduct or their employer's treatment of them.  *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000); *Argyropoulos v. City of Alton*, 539

F.3d 724, 735 (7th Cir. 2008) ("[a] meaningful comparison is one which serves to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints of discrimination"); *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 689 (7th Cir. 2006) (noting that the central question is whether a plaintiff and his colleagues engaged in conduct of comparable seriousness but received dissimilar treatment). Moreover, the similarly-situated analysis calls for a "flexible, common-sense" examination of all relevant factors. *Henry v. Jones,* 507 F.3d 558, 564 (7th Cir.2007).

Ms. Cox identifies three male co-workers who she asserts had a significant number of disciplinary points but were not terminated by Coca-Cola: Lewis Allen ("Mr. Allen"); Tim Glass ("Mr. Glass"); and Matt Zimmerman ("Mr. Zimmerman"). Like Ms. Cox, these three male co-workers each worked in Coca-Cola's Indianapolis manufacturing division under the authority of Mr. Johnson and dealt with the same decision-makers. However, as explained below, a closer review of the evidence reveals that only Mr. Allen and Mr. Glass qualify as "similarly-situated" comparators.

The parties do not dispute that on April 22, 2013, Mr. Allen accrued twelve points under the attendance policy. However, unlike Ms. Cox, Mr. Allen's employment was not terminated. Coca-Cola contends that this was the result of Coca-Cola's executives not having enough time to evaluate the accuracy of the accrued points before one of Mr. Allen's disciplinary points "rolled off" at the start of a new twelve month period. In contrast, Ms. Cox, contends that Coca-Cola "expedited" her termination, but intentionally dragged its feet when disciplining Mr. Allen and did so based on gender bias. Although there is no direct evidence in the record that her termination was expedited, there is evidence that management was "looking forward to terminating Ms. Cox

9

that week." ([Filing No. 51-4 at 5](#).)  Mr. Allen and Ms. Cox were similarly situated in terms of supervisors and alleged misconduct.  As such, a reasonable jury could conclude that Mr. Allen is a similarly-situated comparator for purposes of establishing a *prima facie* case.

A reasonable jury could also conclude that Mr. Glass was a similarly-situated comparator. In an amended affidavit[2], Mr. Glass testified that Coca-Cola's Human Resources department notified him that he had accrued more than twelve disciplinary points.  (Filing No. 59-1 at 2.) Thereafter, Mr. Johnson told Mr. Glass that he would give him a "second chance" and that "he was going to reduce my points" below the requisite number of points needed to trigger termination. *Id.*  In response, Coca-Cola notes that Mr. Glass' employment files show no evidence that Mr. Glass ever exceeded twelve points or that Mr. Glass was contacted by Human Resources regarding violation of the attendance policy.  ([Filing No. 47-7 at 14](#); [Filing No. 47-9 at 5](#).)  In addition, Mr. Johnson denies ever telling Mr. Glass that he would give him a "second chance" and denies adjusting Mr. Glass' attendance points downward.  ([Filing No. 47-5 at 57](#).)

Ms. Cox explains the discrepancy between Mr. Glass' affidavit and the lack of corresponding employment records in Mr. Glass' employment file to be attributable to Coca-Cola withholding critical documents from the employment file during discovery.  (*See* [Filing No. 50 at 28-29](#).)  Coca-Cola asserts that Ms. Cox's allegations of litigation malfeasance are unsupported

---

[2] In the original affidavit, Mr. Glass testified that Mr. Johnson suggested he could give Mr. Glass a "second chance" and that his points were subsequently reduced below the twelve needed for termination.  ([Filing No. 47-2 at 73](#).)  In the amended affidavit, Mr. Glass added that Mr. Johnson, himself, reduced Mr. Glass' attendance points below the requisite number needed to trigger termination.  (Filing No. 59-1 at 2.)  Coca-Cola asks the Court to strike the amended affidavit, submitted for the first time with Ms. Cox's response brief and not during discovery, as it offers "contradictory" testimony to the original affidavit.  However, the Court is not persuaded.  The amended affidavit clarifies rather than contradicts the testimony in the original affidavit.  *See Brown v. Sam's Club, Inc*., 75 F.3d 290, 292-93 (7th Cir. 1996) (noting that the purpose of the exclusionary rule is to prevent subsequent, *contradictory* testimony being used to override an earlier admission); *Bank of Ill. Allied Signal Restraint Sys*., 75 F.3d 1162, 1173 (7th Cir. 1996) (Cudahy, J., concurring) ("[w]hen a party seeks to create an issue of fact by simply submitting an affidavit which *directly contradicts* a witness' earlier sworn comments, a court rightly ignores the later submission since it creates no *genuine* factual dispute") (emphasis added and in original).

and speculative conjectures which cannot be used to prove that Mr. Glass was, indeed, in violation of Coca-Cola's attendance policy. *Liu v. T&H Mach., Inc*., 191 F.3d 790, 797 (7th Cir. 1999) ("[a] party must submit more than mere speculation or conjecture to defeat a summary judgment motion"). Nevertheless, resolving all factual inferences in favor of Ms. Cox, the Court will assume, for purposes of summary judgment, that Mr. Glass actually exceeded twelve disciplinary points as he alleged. Accordingly, a reasonable jury could conclude that Mr. Glass was similarly-situated to Ms. Cox.

However, Mr. Zimmerman is not a similarly-situated comparator because he was not subject to discipline because of accruing more than twelve points under the attendance policy. Instead, Mr. Zimmerman was subject to discipline because of his failure to be at his work station for his full scheduled shift. (*See* Filing No. 47-7 at 25-36.) Ms. Cox does not dispute that Mr. Zimmerman's offense was disciplined under a different work rule than the twelve-point attendance policy. (*See* Filing No. 50 at 26.) Because Mr. Zimmerman's alleged offenses are not the same as Ms. Cox's attendance violations, the Court finds that Mr. Zimmerman is not a similarly-situated comparator to Ms. Cox. *See, e.g.*, *Plummer v. Potter*, 237 Fed. App'x 90, 92 (7th Cir. 2007) (unpublished opinion) (holding that an employee terminated for misrepresenting a medical condition could not compare herself to employees disciplined for unrelated issues such as absenteeism).

In sum, because the legitimate expectations and pretext analysis merge in this case, and because Ms. Cox has identified at least one potential comparator, she has established a *prima facie* case of gender discrimination.

### c.   **Non-Discriminatory Justification and Pretext**

Once the defendant employer asserts a non-invidious explanation for its employment

decisions, the plaintiff must then present sufficient evidence to show that the employer's explanation is merely pretextual. *Keeton*, 667 F.3d at 884; *Grady*, 2015 WL 1011355, at *4.

Pretext means "a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000); *Miller*, 2014 WL 4259628, at *5. Accordingly, the question is not whether the employer's explanation for its employment decision was "accurate, wise, or well-considered", but whether the employer's explanation was "honest". *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). While the Court is not in the position to "sit as a superpersonnel department that will second guess an employer's business decision . . . [the Court] need not abandon good reason and common sense in assessing an employer's actions." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001); *Miller*, 2014 WL 4259628, at *6.

A plaintiff can demonstrate that the employer's explanations are pretextual either directly, by showing that "a discriminatory reason more likely motivated" the employer's actions, or indirectly, by showing that the employer's explanations are "unworthy of credence." *Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009). To show that the employer's non-discriminatory explanations are not credible, the plaintiff must point to evidence that the employer's stated reasons are not the real reasons for the employer's action, have no grounding in fact, or are insufficient to warrant the employer's decision. *Id.*; *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (noting that a plaintiff must identify such "weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's asserted reasons that a reasonable person could find them not credible).

Ms. Cox presents no evidence or argument that she was terminated for any reason other than violating the attendance policy. She admits that she had accumulated the requisite number of

disciplinary points within the twelve month period to subject her to termination under the attendance policy.  (*See* Filing No. 50 at 4, 21; Filing No. 47-1 at 126) ("I was terminated for my- I mean, the point system, I'm not denying that").  In addition, Coca-Cola points out that its decision to terminate Ms. Cox was the result of a careful investigation by Ms. Cox's immediate supervisor, Jason Cossell, Coca-Cola's Labor Relations Consultant, Odinaka Ezeokoli, Coca-Cola's Operational Manager, John Eady, and Coca-Cola's Plant Manager, Mr. Johnson.  (See Filing No. 46 at 9-10; s*ee* also Filing No. 51-3 at 6; Filing No. 47-5 at 19.)  Ms. Cox also does not contend that any of those individuals failed to enforce the attendance policy according to its terms.

Ms. Cox presents no circumstantial evidence to suggest that the individuals involved in her termination were motivated by a discriminatory animus in enforcing the policy, such as verbal abuse or comments made in the workplace.  Instead, she points to the fact that two similarly-situated male comparators—Mr. Allen and Mr. Glass— incurred the requisite number of points under the attendance policy and were not terminated, suggesting gender animus is what *actually* motivated Coca-Cola to terminate her employment.

In rebuttal, Coca-Cola offers at least four similarly-situated male employees who reached the requisite number of attendance points and were terminated under the attendance policy: Edward Bolen, Darryl Davis, William Edwards, and Terry Howard.  (*See* Filing No. 46 at 12-13.) Edward Bolen was a machine operator who was terminated in August 2011 for accumulating 14 attendance points.  Darryl Davis was a machine operator who was terminated on March 29, 2012, for accumulating 14 attendance points.  William Edwards was a machine operator who was terminated on August 8, 2012 when he accumulated 14.5 points.  Terry Howard was a fleet mechanic who was terminated on February 17, 2014 when he accumulated 13 attendance points.

Mr. Johnson was either the interim Plant Manager or the Plant Manager at the time of these terminations.

Ms. Cox does not dispute that these individuals incurred more than twelve points and were terminated under the attendance policy. However, she contends that they are not comparators because Mr. Johnson was not involved in any of their terminations. Mr. Johnson did not recall whether any of these four men worked under his chain of command and Mr. Johnson's name does not appear on the termination paperwork for any of these men. (Filing No. 50 at 13.) Coca-Cola relies on Mr. Johnson's testimony that, as Plant Manager, he reviews all termination decisions and must give his approval on termination decisions. (Filing No. 51-2 at 3) ("I review all terminations with either our labor relations team or HR BP, which is the human resources professional . . ."). (*See also* Filing No. 51-2 at 8.) However, Ms. Cox has designated evidence which disputes that Mr. Johnson approved all terminations while he was Plant Manager. For example, Andre Long was a maintenance mechanic under Mr. Johnson's authority who was terminated in March 2012 and Mr. Johnson admitted that he was not a part of the discussion or dismissal of Mr. Long. (Filing No. 51-2 at p. 10.) Mr. Johnson also testified that he did not recall Daryl Davis or William Edwards and Coca-Cola has offered no documentary evidence to show that Mr. Johnson participated in the decision to terminate these men. With respect to Edward Bolen, Mr. Johnson was the interim Plant Manager at the time of his termination and Mr. Johnson testified that he did not believe Edward Bolen ever worked under his chain of command. In fact, Jay Edwards, the Plant Manager prior to Mr. Johnson was copied on Edward Bolen's termination letter, not Mr. Johnson. (Filing No. 51-2 at 12.) Additionally, Terry Howard was not terminated until February 17, 2014, which was several months after Ms. Cox had been terminated and after she filed her discrimination charge with the Equal Employment Opportunity Commission. Ms. Cox argues that these terminations have no

relevance to whether she was meeting Coca-Cola's legitimate expectation as these men are not similarly situated. The Court agrees that it is reasonably disputed whether Mr. Johnson was involved in these four employment decisions.

Coca-Cola argues that it has produced comparator evidence that Terry Howard and three other males were terminated for exceeding twelve points which is at least probative to show that it did not engage in systematically better treatment of male employees. A trier of fact might draw that conclusion, but it equally might find that Mr. Johnson—the decision-maker for Ms. Cox's termination—had nothing to do with these terminations, and therefore, these four men are not comparators. Coca-Cola is welcome to make this argument to a jury as they are the ones charged with resolving this disputed issue of material fact.

The Court finds that evidence exists which creates genuine issues of fact as to whether Coca-Cola's asserted reason for terminating Ms. Cox employment in July 2013 is pretextural. Ms. Cox has presented evidence that similarly situated males were treated more favorably by Mr. Johnson as the decision-maker on these terminations. Both Mr. Allen and Mr. Glass had accumulated well over the 12 point maximum within a twelve month period and neither was terminated. As such, Ms. Cox has presented evidence that Coca-Cola's stated reason – that she violated the attendance policy – creates inconsistencies and is not the real reason for her termination. *See Senske*, 588 F.3d at 507; *Boumehdi*, 489 F.3d at 792 (noting that a plaintiff must identify such "weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's asserted reasons that a reasonable person could find them not credible). In light of her poor attendance record, it may be difficult for Ms. Cox to convince a jury that her gender is what lied behind the decision-maker's adverse job action. However, taking the summary judgment record in the light most favorable to Ms. Cox, which the Court must do, the Court concludes that Ms. Cox

has survived summary judgment on her gender discrimination claim.   Accordingly, summary judgment is **DENIED** with regard to her Title VII discrimination claim.

## B.   <u>Punitive Damages</u>

Finally, the Court must address whether punitive damages are warranted in this matter.   To recover punitive damages Ms. Cox must show that Coca-Cola engaged in intentional discrimination and has done so with malice or reckless indifference to her federally protected rights.   42 U.S.C. §1981a(b)(1).   The designated evidence must demonstrate that the defendant has engaged in some "egregious" misconduct.   *See Kolstad v. ADA*, 527 U.S. 526, 534 (1999).   In other words, Coca-Cola must have been "motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference to the federally protected rights of others." *Id*. at 536.   Carelessness or negligence is not enough.   *See Emmel v. Coca-Cola Bottling Co*., 95 F.3d 627, 636 (7th Cir. 1996).   This is a higher hurdle than merely proving the underlying unlawful discrimination.   *Id*. *Emmel* is a type of case where punitive damages were warranted.   *Emmel* is not a simple indirect evidence or statistical case of discrimination by the employer, rather, the evidence introduced by plaintiff included a number of statements by the owner, the president, the vice president, and the vice president for the northern zone, which indicated a clear corporate resistance to women holding positions in upper management.   *Id* at 637.

Here, Ms. Cox suffered no gender based verbal abuse or comments in the workplace and the alleged discrimination is shown only through the burden shifting indirect method.   Ms. Cox does not dispute that she had chronic attendance problems and that she received twenty-seven disciplinary actions related to attendance or clocking violations, including fourteen 3-day suspensions and three final warnings.   She admits that the 12.5 points she accumulated under the policy were calculated correctly, and that Coca-Cola undertook a deliberate and good faith process

16

to confirm that her points were correctly calculated.  Although question of material fact exist as to whether Mr. Johnson was involved in the termination of similarly situated male employees who accumulated more than twelve points, there is no evidence that Coca-Cola as a company had a policy of discrimination against women.  After all, Coca-Cola terminated some males who violated the policy, such as Edward Bolen, Darryl Davis, William Edwards, and Terry Howard.  The designated evidence demonstrates that Coca-Cola did not act with malice, fraud, gross negligence, or oppressiveness in terminating Ms. Cox, therefore, Coca-Cola's motion for summary judgment on her claim for punitive damages is **GRANTED**.

### IV.  CONCLUSION

For the reasons stated above, Coca-Cola's Motion for Summary Judgment (Filing No. 45) is **GRANTED in part and DENIED in part**.  Ms. Cox's claims for retaliation, reinstatement and punitive damages are **dismissed**.  Ms. Cox has demonstrated a dispute of material fact on her gender discrimination claim under the indirect method of proof, therefore her claim for discrimination based on gender survives summary judgment.

**SO ORDERED.**

Date: 6/9/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@stowersandweddle.com

Koryn Michelle McHone
BARNES & THORNBURG LLP
kmchone@btlaw.com

John T. L. Koenig
BARNES & THORNBURG, LLP
john.koenig@btlaw.com